### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ASHANTI FELDER, | ) | |
| | ) | CASE NO. 1:07-CV-01535 |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE GREG WHITE |
| OHIO ADULT PAROLE AUTHORITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Ashanti Felder, ("Felder"), challenges the constitutionality of his conviction in the case of *State v. Felder*, Cuyahoga County Case No. CR-05-468519.  Felder, represented by counsel Paul Mancino, Jr., filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on May 25, 2007 with the United States District Court for the Northern District of Ohio.  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Felder's petition (Doc. No. 1) be DENIED.

## I.  Procedural History

**A.**     **Conviction**

On May 30, 2005, the Cuyahoga County Grand Jury returned an indictment charging

Felder with the following: one count of possession of a controlled substance in violation of Ohio

Revised Code ("O.R.C.") § 2925.11, to wit heroin, in an amount less than one gram with a

firearm specification; one count of drug trafficking in violation of O.R.C. § 2925.03 with a

firearm specification; one count of possession of criminal tools in violation of O.R.C. § 2923.24;

and one count of having a weapon while under disability in violation of O.R.C. § 2923.13.  (Doc.

No. 8, Exh. A.)

Felder pled not guilty to all charges in the indictment.  The jury found Felder guilty of

possession of a controlled substance but without the firearm specification, guilty of possession of

criminal tools, guilty of having a weapon while under a disability, and not guilty of drug

trafficking.  (Doc. No. 8, Exh. B.)  On November 14, 2005, the trial court sentenced Felder to

two nine month sentences and one three year sentence to be served concurrently.  (Doc. No. 8,

Exh. C.)

**B.**     **Direct Appeal**

Felder, represented by his trial counsel Paul Mancino, Jr., filed a timely appeal with the

Eighth District Court of Appeals ("state appellate court") raising the following assignments of

error:

> <u>Assignment of Error I</u>
> Defendant was denied due process of law when the court overruled a motion to
> suppress where Defendant was held *incommunicado* without access to a phone in
> order to coerce a consent to search.

2

Assignment of Error II
Defendant was denied due process of law when the court refused to suppress any
statements and consent by Defendant when he was not advised of his
constitutional rights.

Assignment of Error III
Defendant was denied due process of law when the court considered and ruled on
Defendant's motion to suppress after it impaneled a jury.

Assignment of Error IV
Defendant was denied due process of law and his right of confrontation when the
court allowed hearsay evidence.

Assignment of Error V
Defendant was denied a fair trial because of judicial and prosecutorial
misconduct.

Assignment of Error VI
Defendant was denied his rights under the Sixth and Fourteenth amendments to
the United States Constitution and Article I, Section 14 of the Ohio Constitution
when the court, over defense objection, substituted a discharged alternate juror
after the jury had commenced its deliberations.

Assignment of Error VII
Defendant was denied due process of law when the court had the second alternate
juror replace the discharged juror.

Assignment of Error VIII
Defendant was denied his rights under the Sixth Amendment when the court
discharged a juror during deliberations.

Assignment of Error IX
Defendant was denied due process of law and a fair trial when the court failed to
give any instruction concerning the evidence of other criminal acts and a prior
conviction.

Assignment of Error X
Defendant was denied due process of law when the court instructed on
constructive possession and presumption of knowledge.

Assignment of Error XI
Defendant was denied due process of law when the court deviated in its
instructions through extemporaneous comments.

3

> Assignment of Error XII
> Defendant was denied due process of law when the court made a determination of factual issues in its instructions to the jury.
>
> Assignment of Error XIII
> Defendant was denied due process of law when the court overruled Defendant's motion for judgment of acquittal.

(Doc. No. 8, Exh. D.)  On October 12, 2006, the state appellate court affirmed the judgment of the trial court.  (Doc. No. 8, Exh. E.)  On October 23, 2006, Felder filed an Application for Reconsideration.  (Doc. No. 8, Exh. F.)  The application was denied on November 13, 2006.

On December 18, 2006, Felder appealed his conviction to the Ohio Supreme Court. (Doc. No. 8, Exh. G.)  On March 14, 2007, the Ohio Supreme Court dismissed Felder's appeal as not involving any substantial constitutional question.  (Doc. No. 8, Exh. H.)

**C.      Federal Habeas Petition**

On May 25, 2007, Felder filed a Petition for Writ of Habeas Corpus.  His grounds for relief are summarized as follows:

> GROUND ONE: The Petitioner was denied a fair appeal because the state appellate court based its opinion on incorrect recitations of the record in violation of the Fourteenth Amendment.
>
> GROUND TWO: Petitioner was denied due process of law in violation of the Fifth and Sixth Amendments, because he was searched before the police obtained proper consent and he was denied an opportunity to contact an attorney.
>
> GROUND THREE: Petitioner was denied due process of law in violation of the Fifth and Sixth Amendments, because he was interrogated without being first advised of his constitutional rights.
>
> GROUND FOUR: Petitioner was denied due process of law, a fair trial, and his right of confrontation in violation of the Sixth and Fourteenth Amendments.
>
> GROUND FIVE: Petitioner was denied a fair trial in violation of

4

the Sixth and Fourteenth Amendment due to extensive judicial and prosecutorial misconduct.

GROUND SIX: Petitioner was denied his rights under the Sixth and Fourteenth Amendments when the trial court substituted a discharged juror after the jury had commenced its deliberation.

GROUND SEVEN: Petitioner was denied due process of law and a fair trial in violation of the Fourteenth Amendment when the trial court failed to provide the jury with a limiting instruction concerning evidence of other alleged criminal acts and/or prior convictions.

GROUND EIGHT: Petitioner was denied due process of law in violation of the Fourteenth Amendment when the trial court gave a jury instruction concerning constructive possession and by commenting extensively on the jury instructions.

GROUND NINE: Petitioner was denied due process of law in violation of the Sixth and Fourteenth Amendments when the trial court determined a factual issue while instructing the jury.

GROUND TEN: Petitioner was denied due process of law in violation of the Fourteenth Amendment because there was insufficient evidence to support his conviction.

(Doc. No. 1.)

## II.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Felder's conviction as follows:

In 2005, Felder was charged with drug possession and drug trafficking, each charge containing a firearm specification.  He was also charged with possession of criminal tools and having a weapon while under disability.

Prior to trial, Felder moved to suppress the evidence found in his apartment.  The court considered and denied his motion after the jury was empaneled.  The jury

5

then heard the following evidence.

Felder had been under surveillance since October 2004 for suspected drug trafficking.  The police had received numerous complaints of suspicious activity involving Felder at his Cuyahoga County apartment.  In May 2005, a resident of the apartment complex observed Felder engaging in "abnormal activities" that appeared to be a drug transaction.  The resident followed Felder to a shopping center in Lake County and observed a man enter Felder's car and make an exchange.  The resident contacted the police and relayed what he had observed.

Willoughby Hills police set up surveillance at the shopping center.  Officer Cooper testified that he observed Felder's car driving across the parking lot at a high rate of speed.  Felder jumped out of his car and jogged into a store, ignoring Cooper's orders to "[h]old on a second.  Stop."  Cooper and other officers followed him into the store and brought him outside for a protective search.  Two cell phones and $2,000 in cash were found on his person.  Marijuana was found in plain view inside Felder's car, and a resulting search recovered a rock of heroin.

While being detained in Lake County, Felder signed a consent to search form to allow officers to search his apartment in Cuyahoga County.  During that search, the police recovered a gun, bullets, a packet of heroin, plastic baggies, and razor blades.

The jury found Felder guilty of drug possession, but not guilty of the firearm specification. He was also found guilty of possession of criminal tools and having a weapon while under disability, but he was acquitted of drug trafficking.  The court sentenced him to a total of three years in prison.

*State of Ohio v. Felder*, 2006-Ohio-5332 ¶¶2-7, 2006 Ohio App. LEXIS 5311 (Ohio Ct. App. 2006).

## III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

6

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court

7

decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th 2006), *citing Herbert v. Billy*,

160 F.3d 1131, 1135 (6th Cir. 1998).

**A.      Grounds Two and Three: Suppression, *Miranda*, and Access to an Attorney**[1]

In his second and third grounds for relief, Felder argues that he was denied due process

and the right against self-incrimination because: (1) his consent to a search was obtained

through coercion; (2) he was denied access to an attorney; and (3) he was interrogated without

being informed of his constitutional rights.  (Doc. No. 1.)  Although Felder characterizes his

claim as arising under the Fifth Amendment right against self-incrimination, Felder's claim is

properly construed as arising under the Fourth Amendment.  *See Schneckloth v. Bustamonte*,

412 U.S. 218, 228 (1973); *accord United States v. Carr*, 187 Fed. Appx. 602, 606 (6th Cir. 2006)

("The Fourth Amendment prohibits searches without a warrant or probable cause with few

exceptions, one of which is valid consent.")  In order to better address grounds two and three,

the Court has separated Felder's argument into independent, cognizable claims under the Fourth,

Fifth and Sixth Amendments to the U.S. Constitution.

**1.      Fourth Amendment**

Generally, a writ of habeas corpus is not available on the ground that a petitioner's

Fourth Amendment rights were violated if the petitioner had an opportunity to present the

Fourth Amendment claim in state courts.  *See Stone v. Powell*, 428 U.S. 465, 494 (1976);

*Wallace v. Kato*, 127 S. Ct. 1091, 1099 n. 5 (2007); *accord Ewing v. Ludwick*, 134 Fed. Appx.

---

[1]  Ground One of Felder's petition alleges that he was denied his right to appeal due to
numerous errors by the state appellate court, which Felder raises in his remaining
grounds for relief.  Therefore, the Court will address the other alleged errors before
addressing ground one.

8

907, 911 (6th Cir. 2005). The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. The Sixth Circuit has found that the determination as to whether a petitioner has had "an opportunity for full and fair litigation of a Fourth Amendment claim" requires a federal district court to make two separate inquiries. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). First, the district court should ascertain "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Id*. Second, the district court must ascertain "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id*.

Because the Sixth Circuit already has determined that "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is . . . clearly adequate," this Court's role is confined to the second inquiry – namely whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *Id*.; *accord Bridges v. Bradshaw*, 2006 U.S. Dist. LEXIS 96749 (N.D. Ohio 2006).

Felder asserts that he was not granted a proper hearing because "the court interspersed testimony on the motion to suppress after the jury was empaneled and witnesses testified on the merits case" and because the court deferred ruling on his motion until the end of trial. (Doc. No. 9 at 5.) Felder's characterization of the record is inaccurate. The trial court's journal entry states as follows: "Case continued in trial. Motion to Suppress hearing held. Motion denied. Jury trial continues. Opening statements made. State presents its case." (Doc. No. 8, Exh. J.)

9

A review of the transcript reveals that the trial court held a suppression hearing *before* opening statements were presented.  (Tr. 158-270.)  The trial judge overruled the motion to suppress. (Tr. 268.)  After the trial had commenced, defense counsel incorrectly stated that the trial court had not ruled on the motion to suppress; the trial judge disagreed and stated that he already ruled on the motion.  (Tr. 463-64.)  Nevertheless, the trial judge allowed defense counsel to conduct a *voir dire* of witnesses outside the presence of the jury to further his argument for suppression. (Tr. 465-92.)  The trial judge opined that the police had a reasonable suspicion to stop Felder and, because officers testified that they saw marijuana residue and a scale used in drug deals in plain view, there was nothing problematic with the arrest.  (Tr. 492-93.)

Felder was given a proper suppression hearing to present his Fourth Amendment claim and the trial judge denied his motion at the close of the hearing.  The fact that Felder's trial counsel repeatedly raised the suppression issue and that the trial court indulged defense counsel on such occasions, though it had already decided the matter, did not result in a failure of Ohio's mechanism for presenting Fourth Amendment claims.  Rather than being prejudiced, Felder may have benefitted from the trial court revisiting the suppression issue during trial, as Felder essentially was provided with a second bite at the apple despite the trial judge having overruled his motion to suppress.[2]  Thus, there was nothing improper about the state's mechanism for hearing Felder's Fourth Amendment claim.

As such, absent egregious error, this Court cannot consider the underlying merits of

---

[2]  Furthermore, Ohio law clearly contemplates that a trial judge's evidentiary rulings during trial may amount to suppression, thereby triggering the state's right to file a mid-trial appeal.  *See* O.R.C. § 2945.67; *State v. Malinovsky*, 60 Ohio St.3d 20, 573 N.E.2d 22 (Ohio 1991).

10

Felder's Fourth Amendment claim.  "When a petitioner alleges egregious error in the application of fourth amendment principles, ... however, a federal habeas court might be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner."  *Riley*, 674 F.2d at 526.  The trial court, by denying Felder's motion to suppress the fruits of the apartment search, undoubtedly found that Felder's consent was voluntary.  This Court's review of the suppression hearing transcript and the motion to suppress reveals that defense counsel did not argue that his client's will was overcome and that the consent was, therefore, coerced.  Defense counsel's argument focused exclusively on the amount of time Felder was in custody before he gave his consent and the alleged denial of his request for counsel.  However, the record does not support the argument that Felder requested to contact counsel or that his wish to contact his mother was for the purpose of obtaining counsel.  The state appellate court found that while Felder asked to call his mother during his confinement, "there is nothing in the record showing that the purpose of the call was to obtain counsel."  *Felder*, 2006-Ohio-5332 ¶14.[3]   Under these circumstances, the Court declines to find any egregious error in the trial court's denial of the motion to suppress.

> ## 2.      Fifth Amendment

Finally, Felder alleges that he was not given his *Miranda* warnings prior to consenting to the search of his apartment.  (Doc. No. 1.)  The state appellate court found that Felder was properly advised of his *Miranda* rights and cited Detective Denise DeBiase's ("Det. DeBiase") testimony that Officer Meano read Felder his rights when he was arrested, Det. DeBiase's

---

[3]  This Court's own review of the record did not uncover any evidence supporting Felder's argument.

further testimony that she also asked Felder if he understood his rights when she arrived at the police station, and finally defense counsel's statement during the suppression hearing that Felder was "given his rights" at the police station.  *Felder*, 2006-Ohio-5332 at ¶21.

Felder argues that the Willoughby Police Department and Det. DeBiase were allegedly conducting two separate investigations and, therefore, Det. DeBiase was required to re-read Felder his *Miranda* rights based on the Supreme Court's holding in *McNeil v. Wisconsin*, 501 U.S. 171 (1991).  Felder misconstrues the holding of *McNeil*.  The *McNeil* court held that the invocation of a defendant's Sixth Amendment right to counsel during a judicial proceeding is offense specific and does *not* constitute an invocation of the Fifth Amendment right to counsel deriving from *Miranda* with respect to other unrelated offenses.  *Id*.  Conversely, the invocation of one's Fifth Amendment right to counsel is not offense specific and, therefore, "once asserted, prevents any further police-initiated interrogation outside the presence of counsel."  *Id*.  In Felder's case, as discussed above, there is no evidence that Felder ever requested counsel or invoked his right to remain silent.  Under these circumstances, the state appellate court's finding that Felder was properly read his *Miranda* rights does not constitute an unreasonable application of clearly established federal law.

### 3.    Sixth Amendment

Felder, without any meaningful analysis, also appears to assert a Sixth Amendment violation based on the police allegedly denying him access to counsel while he was in custody. (Docs. No. 1 & 9.)  The state appellate court made the following factual findings concerning Felder's alleged requests for counsel while in custody.  "Although it is undisputed that Felder asked to call his mother, there is nothing in the record showing that the purpose of the call was

12

to obtain counsel.  Moreover, there is nothing in the record indicating that Felder asked to speak with an attorney." *Felder*, 2006-Ohio-5332 ¶14.[4]  Felder has not provided this Court with any information to rebut the state appellate court's portrayal of the above facts.

In his traverse, Felder cites O.R.C. § 2935.14 which, in relevant portion, states as follows: "[i]f the person arrested is unable to offer sufficient bail or, if the offense charged be a felony, he shall, prior to being confined or removed from the county of arrest, as the case may be, be speedily permitted facilities to communicate with an attorney at law of his own choice, or to communicate with at least one relative or other person for the purpose of obtaining counsel ...."  Felder, however, fails to explain this claim through relevant argument.  Nonetheless, assuming *arguendo* that the police violated applicable state law, it is well settled that perceived errors of state law are not cognizable upon habeas review unless a state court's error in interpreting or applying its own law has rendered the trial that convicted the petitioner so fundamentally unfair as to have deprived him of substantive due process in violation of the U.S. Constitution.  *See, e.g., Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998).

Felder's argument fails for two reasons.  First, "the Sixth Amendment right to counsel attaches only to charged offenses."  *Tex. v. Cobb*, 532 U.S. 162, 172 (2001).  Second, the right to counsel in the *Miranda* context does not accrue until a person unequivocally asks for counsel.  *See Davis v. United States*, 512 U.S. 452, 459 (1994); *Fautenberry v. Mitchell*, 515 F.3d 614,

---

[4]  As stated in Part II, *supra*, a state court's determination of a factual issue shall be presumed correct under 28 U.S.C. § 2254(e)(1) and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003).

630 (6th Cir. 2008).  Thus, Felder's claim that his Sixth Amendment right to counsel was violated is without merit.  There is no evidence he requested counsel while he was in custody prior to his consent to search.  Also, Felder was represented at all stages of the criminal proceedings by his current counsel Mr. Mancino.

Felder's first and second grounds for habeas relief are lacking in merit.

**B.    Grounds Four and Five: Right of Confrontation and Misconduct**

Felder alleges that he was denied his right to confront witnesses when the trial court allowed the admission of hearsay evidence that was not subject to cross-examination.  Further, Felder alleges that he was denied a fair trial due to prosecutorial and judicial misconduct.  (Doc. No. 1.)

**1.        Confrontation**

Felder alleges that certain hearsay testimony admitted at trial amounted to a denial of his right to confront witnesses.  (Doc. No. 1.)  Specifically, Felder objects to the admission of hearsay statements allegedly made by Nancy Insana ("Insana"), the property manager, indicating that Felder resided in the apartment and was the sole leaseholder.  (Doc. No. 9 at 10.) There is no dispute that Insana did not appear as a witness at trial.  According to Felder, the statements made by Insana were admitted through the testimony of Det. DeBiase and Detective Mike Gerle ("Det. Gerle").  *Id*.

The Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  This guarantee applies to both federal and state prosecutions.  *See Pointer v. Texas*, 380 U.S. 400, 406 (1965).  The Confrontation Clause bars the admission of "testimonial statements"

14

made by persons who have not testified as witnesses at trial.  *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004); *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004).

Felder objects to Det. DeBiase's testimony that she was able to determine, through the course of her investigation, that (1) Brandy Godfrey, the person to whom the gun found in the search was registered, was Felder's girlfriend and (2) Felder lived at the apartment that was subject of the search while Felder's girlfriend did not.[5]  (Doc. No. 9 at 10.)  Felder also objects to similar testimony from Detective Mike Gerle ("Det. Gerle") that Felder lived alone at the apartment.[6]  *Id.*  On direct examination, both Det. DeBiase and Det. Gerle testified that Felder lived at the apartment and that he was the sole lessee.  (Tr. 393, 519.)  Felder objected to this testimony at trial and moved to strike the testimony.  *Id.*  On cross-examination, Det. DeBiase testified that Felder was the sole leaseholder and the only one with a key to the apartment.  (Tr. 410.)  When defense counsel inquired about the basis of this knowledge, Det. DeBiase stated that she spoke to Insana, the property manager.  *Id.*  On cross-examination, when asked by defense counsel how he knew the apartment was listed only under Felder's name, Det. Gerle responded that he was informed by Det. DeBiase and the property manager.  (Tr. 525.)

The state appellate court found that, because these statements were elicited by Felder on cross-examination, Felder could not "take comfort from the error he invited."  *Felder*, 2006-

---

[5]  Also, Felder appears to believe that Det. DeBiase's testimony concerning whether it was legal for a convicted felon to own a firearm was hearsay.  Regardless of whether such testimony was properly admitted, it certainly does not constitute a testimonial statement made by an out-of-court declarant that implicates the confrontation clause.

[6]  With respect to the issue of whether Felder's girlfriend also lived at the apartment, the testimony contains some inconsistent evidence, as some officers noted the presence of female clothing in the apartment while others did not.

Ohio-5332 at ¶¶25-27.  The Sixth Circuit has stated that "[u]nder the invited error doctrine, it is an accepted matter of law that where the injection of allegedly inadmissible evidence is attributable to the action of the party seeking to exclude that evidence, its introduction does not constitute reversible error."  *All Am. Life & Cas. Co. v. Oceanic Trade Alliance Council Int'l, Inc.*, 756 F.2d 474, 479-480 (6th Cir. 1985); *accord Fields v. Bagley*, 275 F.3d 478, 486 (6th Cir. 2001); *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993).

Setting aside the issue of whether it was Felder's trial counsel who injected Insana's hearsay statements into evidence, the admission of the direct testimony, even if erroneous, amounts to harmless error.  Violations of the Sixth Amendment's Confrontation Clause are subject to harmless error analysis.  *See, e.g., United States v. Savoires*, 430 F.3d 376, 382 (6th Cir. 2005); *Madrigal v. Bagley*, 413 F.3d 548, 551 (6th Cir. 2005); *Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003).  A constitutional error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *accord California v. Roy*, 519 U.S. 2, 4-5 (1996); *Fulcher v. Motley*, 444 F.3d 791, 808-09 (6th Cir. 2006).

As discussed in greater detail below, Ohio law recognizes "constructive possession" as satisfying the statutory requirement of "possession."  Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within one's actual ownership or immediate physical possession, and knowledge of contraband in one's home is sufficient to show constructive possession.  *See* Citations in "Section D," *infra*. In addition, more than one person may "possess" an item at the same time and the issue of

whether Felder's girlfriend also resided at the apartment is immaterial.[7]  Here there was ample evidence aside from the hearsay statement of Insana to prove that Felder resided in the apartment where the contraband was recovered.  First, Det. DeBiase testified that Felder signed a consent form to search his apartment and the consent form was submitted into evidence as Exhibit 1.  (Tr. 364-66.)  The consent form also contained a handwritten promise by Det. DeBiase not to "mess up" Felder's apartment after Felder had expressed concern that the search would destroy his apartment.  *Id*.  Furthermore, the consent form specified the address that the police searched.  *Id*.  Iorio, who lived at the apartment complex, testified that Felder resided there as well and that he had seen Felder come and go "a hundred times."  (Tr. 287-88.)  Det. DeBiase also testified that she saw the lease and that Felder's name was listed on it.  (Tr. 421.)  The record also contains testimony that the gun, the heroin, and the criminal tools were all either in plain view or found in easily accessible areas of the apartment such as kitchen cupboards or a shelf in the bedroom.  (Tr. 368-72, 388, 414.)  Given the weight of all this evidence, the jury hearing Insana's statement through the officers did not have a substantial and injurious influence on the verdict.

Finally, Felder also objects to the testimony of Det. DeBiase concerning complaints received from Iorio.  (Doc. No. 9 at 10.)  First, Det. DeBiase's statements did not constitute hearsay as her testimony was not offered to "prove the truth of the matter."  Det. DeBiase was asked whether she received complaints from a resident of the apartment complex by the name of

---

[7]  Ohio Jury Instructions state that "two or more persons may have possession if together they have the ability to control it, exclusive of others" and "[o]wnership is not necessary [because] [a] person may possess or control property belonging to another." 4-409 O.J.I. § 409.50

Anthony Iorio ("Iorio").  (Tr. 389.)  She answered in the affirmative and was then asked to describe the substance of Iorio's complaints.  (Tr. 391.)  She responded that Iorio complained of suspicious activity, namely possible drug activity.  *Id*.  This testimony was not proffered to prove that Felder was engaging in drug activity during the time period that Iorio made the complaints.  Moreover, Iorio, who testified at trial, was cross-examined by defense counsel.  (Tr. 280-335.)  Therefore, if any testimony given by Det. DeBiase contained hearsay statements received from Iorio, Felder's Sixth Amendment confrontation right was not violated.

### 2.    Prosecutorial and Judicial Misconduct

Felder alleges that the prosecution engaged in misconduct due to several inappropriate remarks during opening and closing statements.  (Doc. No. 9 at 14-15.)

To constitute a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate statements warrant a reversal.  *See United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994).  First, a court must determine whether a prosecutor's statements were improper followed by a second determination as to whether the impropriety constitutes reversible error.  *DeJohn*, 368 F.3d at 548.  The following four factors are used to determine whether reversal is necessary: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused."  *Id*., *quoting Carroll*, 26 F.3d at 1385.  Further, prosecutorial

18

misconduct claims are subject to harmless error analysis. *See Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

The bulk of the statements that Felder alleges were improper consisted of statements by the prosecution that elements of the offenses had been satisfied beyond a reasonable doubt and that the jury should, therefore, find him guilty. (Doc. No. 9.) The other allegedly improper conduct consists of remarks made during opening statements that Felder was arrested for selling drugs in Willoughby Hills and a remark to the jurors that they should "think about where they live" and "how many of you care about your neighborhoods and where you live." (Tr. 600.) The state appellate court found that "[w]hile a few of the comments may have been improper, i.e. asserting that certain elements of the crime were proven beyond a reasonable doubt, they do not rise to the level of substantially impairing Felder's rights." *Felder*, 2006-Ohio-5332 at ¶35. Further, the appellate court found that Felder failed to demonstrate how the alleged misconduct deprived him of a fair trial or how the outcome was affected.

Assuming *arguendo* that the cited remarks were improper, the state court's finding that these comments did not constitute reversible error was not an unreasonable application of existing federal law. The remarks did not mislead or prejudice the jury, and the trial court's repeated instructions that the attorney's arguments do not constitute evidence were sufficient to cure any potential prejudice. Although Felder seems to allege that the prosecution's reference to the jurors' neighborhoods was an improper appeal to the passions of the jury, these remarks were proceeded by a statement referring to the witness Iorio and the defense's portrayal of the witness as a "want-to-be-a-police-officer." (Tr. 600.) Taken in context, these remarks were clearly an attempt to rehabilitate the neighbor Iorio and to explain the motivation for his actions.

19

Finally, the evidence against Felder was strong, as the items which he was convicted of possessing were all found in his apartment.  As such, Felder's trial was not rendered fundamentally unfair by the prosecution's allegedly improper conduct.

Felder also alleges that the trial judge exhibited judicial bias.  The Due Process Clause requires a defendant be given a "fair trial in a fair tribunal," before a judge who has no actual bias against the defendant or interest in the outcome of a case.  *See Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997) (citations omitted); *accord Getsy v. Mitchell*, 495 F.3d 295, 311 (6th Cir. 2007).  Neither judicial "expressions of impatience, dissatisfaction, annoyance, and even anger," nor judicial remarks "critical or disapproving of, or even hostile to, counsel, the parties, or their cases," support a bias or partiality challenge.  *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).  Furthermore, opinions formed by a judge on the basis of facts raised at trial or other events that occurred during proceedings do not constitute bias or partiality "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Id*. However, where judicial bias infects the entire trial, it is not subject to harmless error review. *See Maurino v. Johnson*, 210 F.3d 638, 646 (6th Cir. 2000).  If a court determines that the actions of the trial judge resulted in a constitutional violation, the court must overturn the state court decision.  *Id*.

Felder cites four instances of allegedly improper conduct by the trial judge.  (Doc. No. 9 at 13-14.)  First, Felder finds fault with the trial judge's conduct concerning an objection made by defense counsel that was overruled.  (Tr. 391.)  After the witness gave a response that appeared favorable to Felder, the trial judge asked whether defense counsel wanted to withdraw his objection.  *Id*.  Defense counsel indicated that he did not want to withdraw his objection but

wanted the answer to stand.  *Id.*  Thereafter, the trial judge sustained the objection.  After

defense counsel stated he wanted to "let it go the way it is," the Court relented and allowed the

answer to stand.  (Tr. 391-92.)  The state appellate court found that this single exchange, which

appeared to stem from some frustration between the trial judge and defense counsel, did not

amount to judicial bias and did not deprive Felder of a fair trial.  *Felder*, 2006-Ohio-5332 at

¶¶31-32.

Felder also alleges impropriety on the basis of the following statements by the trial

judge: (1) referring to Felder's girlfriend as his "paramour;" (2) stating that defense counsel's

goal is to create appellate issues; and (3) expressing wonder that defense counsel obtained a law

degree after defense counsel suggested Felder's girlfriend should sue the trial judge for referring

to her as Felder's paramour.  (Tr. 545-47, 573-74.)  The state appellate court found that these

statements did not reflect bias and, because they were made outside the jury's presence, did not

deprive him of a fair trial.  *Felder*, 2006-Ohio-5332 at ¶¶30-33.

The trial judge's reference to Felder's girlfriend as his "paramour" is not illustrative of

bias.[8]  Defense counsel's contention that Felder's girlfriend should sue the trial judge,

presumably for defamation, was rather inappropriate and the trial judge's obviously irritated

retort was not indicative of judicial bias.  As stated above, a trial judge's "expressions of

impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias as judges

remain "imperfect men and women" even after their appointment.  *Liteky*, 510 U.S. at 555-56.

---

[8]  Webster's Third New International Dictionary defines a *paramour* as "one who loves
or is loved illicitly" or "one taking the place without the legal rights of a husband or
wife."  Mistress or lover are given as synonyms.  All parties referred to the person in
question as Felder's girlfriend.

Finally, the trial judge's statement disapproving of defense counsel's tactics was not demonstrative of judicial bias, as statements made by a trial judge during the course of a trial that are critical of counsel, the parties, or their cases, "ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. In a similar matter, the Sixth Circuit found that judicial bias did not permeate the trial even where a trial judge displayed some animosity towards defense counsel, especially where most of the disagreements between defense counsel and the trial judge occurred outside the jury's presence. *Maurino*, 210 F.3d at 646.

The state appellate court's decision with respect to alleged judicial bias amounted a reasonable application of clearly established federal law, as these testy exchanges and/or comments do not, in and of themselves, demonstrate a deep-seated antagonism by the trial judge against Felder or his trial counsel. For the foregoing reasons, Felder's fourth and fifth grounds for relief are without merit.

## C.     Ground Six: Substitution of a Juror

Felder alleges that his Sixth Amendment right to a trial before an impartial jury was violated when (1) the trial court substituted a juror *after* the jury had commenced its deliberations; and (2) the trial court seated the second alternate juror, instead of the first, after an original juror was dismissed. (Doc. No. 9.)

The trial court released the alternate jurors after the jury was charged but admonished them not to discuss the matter with anyone until they had been informed that a verdict was announced. *Felder*, 2006-Ohio-5332 at ¶42. The jury proceeded to deliberate for one hour before retiring for the day. *Id*. at ¶43. The following day, one of the jurors informed the court that she no longer wished to serve on the jury because she felt intimidated by one of Felder's

22

friends who had allegedly been staring at her during court proceedings.  *Id.*  During a discussion with counsel and the court, the juror stated that she "just can't give a verdict" due to her apprehension.  (Tr. 708.)  Defense counsel indicated that he preferred that the juror be seated anyway or that a mistrial be declared.  (Tr. 712-13.)  The trial court, however, dismissed the juror and replaced her with an alternate.  (Tr. 731-32.)  The trial judge queried the jury members whether they could still be fair, impartial, and whether they could begin their deliberations anew.  (Tr. 723-34.)  After the jurors answered in the affirmative, the trial judge instructed the jury to "start fresh" because there was a new juror.  *Id.*

The state appellate court found that the trial court actually seated the next alternate rather than the second alternate despite some confusion among the trial court and the parties.  *Felder*, 2006-Ohio-5332 at ¶47.  This Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).  Neither Felder's petition nor his traverse cites any evidence from the record sufficient to rebut the presumption that the trial court did in fact seat the next alternate juror.  In addition, Felder has cited no federal law supporting his argument that placing an alternate on the jury out of the order in which he or she was seated amounts to a Sixth Amendment violation.  This Court is unaware of any such law.  Although Federal Rule of Criminal Procedure 24(c)(2)(B) ("Rule 24(c)") states that alternate jurors replace jurors in the same sequence in which the alternates were selected, the federal criminal rules of procedure are not applicable to state court proceedings and Rule 24(c) is not a constitutional rule.  *Cf. Alvarez v. Straub*, 21 Fed. Appx. 281, 283 (6th Cir. 2001) (finding that federal Criminal Rule 11 was not a "constitutional rule").  In fact, several circuit courts have found that, even in federal criminal proceedings, a violation of Rule 24(c) does not require reversal *per se*.  *See, e.g., United States*

*v. Delgado*, 350 F.3d 520, 526 (6th Cir. 2003); *United States v. Brewer*, 199 F.3d 1283, 1286 (11th Cir. 2000) ("reversal is required only if there is a reasonable possibility that the district court's violation of Rule 24(c) actually prejudiced the defendant by tainting the jury's final verdict.")  As Felder has neither identified any clearly established federal law, as determined by the United States Supreme Court, that requires a trial court to replace jurors with alternates in sequential order, nor established how the final verdict was tainted, his claim is without merit.

The state appellate court further found that Felder was not prejudiced by the dismissal of a juror after deliberations began because deliberations had been relatively brief, the trial court instructed the jurors to begin anew, and Felder had "failed to present any argument indicating that the outcome of the trial would clearly have been different."  *Id*. at ¶45.

Felder again has not cited any clearly established federal law suggesting that the dismissal of a juror after deliberations had briefly commenced violates a defendant's Sixth Amendment jury trial rights and the cases cited by Felder are inapposite.[9]  "The Supreme Court has not specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations have begun.  Most of the federal courts that have addressed the issue, however, have held that when circumstances require, substitution of an alternate juror in place of a regular juror after deliberations have begun does not violate the Constitution, so long as the judge

---

[9]  In lieu of citing any federal law, Felder relies on state law that suggests seating an alternate is improper after the start of deliberations.  However, a federal court reviewing a habeas petition is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law" unless the error is so egregious that it amounts to a denial of fundamental fairness.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Felder has not explained how this alleged violation of state law rendered his trial fundamentally unfair.

instructs the reconstituted jury to begin its deliberations anew and the defendant is not prejudiced by the substitution." *Claudio v. Snyder*, 68 F.3d 1573, 1575 (3rd Cir. 1995) (collecting cases).  A recent decision of the Sixth Circuit Court of Appeals addressed a similar issue.  *See Tate v. Bock*, 2008 U.S. App. LEXIS 6928 (6th Cir. Mar. 23, 2008).  Therein, the petitioner argued that recalling an alternate juror after deliberations had begun violated his Sixth Amendment and due process rights, as did the trial court's failure to instruct the jury to begin deliberating anew.  *Id*. at *2.  With respect to the petitioner's latter argument, the Sixth Circuit found that a trial court's failure to instruct a jury to begin deliberations anew did not violate any clearly established federal law.  *Id*. at *7.[10]

Here, the trial judge clearly instructed the jury to begin deliberating anew.  The original juror was replaced after she had indicated she would be unable to return a fair verdict. Furthermore, Felder has not alleged that the alternate juror was biased.  There is no clearly established federal law to support Felder's argument that the trial court's action amounts to a deprivation of his right to a jury trial.

Therefore, ground six of Felder's petition is without merit.

**D.      Grounds Seven, Eight and Nine: Jury Instructions**

In grounds seven, eight, and nine of his petition, Felder claims that his constitutional rights were violated due to flaws in the jury instructions.  (Doc. No. 1.)  Specifically, Felder contends that the trial court erred by: (1) failing to give limiting instructions concerning Felder's other alleged criminal acts and prior convictions; (2) giving a jury instruction concerning

---

[10]   The Sixth Circuit affirmed the district court's finding that the petitioner's first claim was procedurally defaulted.  *Id*.

constructive possession while deviating from the written jury instructions; and (3) making a factual determination while instructing the jury on an issue reserved for the jury.  *Id*.

In order to warrant habeas relief, a petitioner must demonstrate that the jury instructions were *both* erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991), *citing Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  The category of infractions that violate "fundamental fairness" is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights.  *Id*.  "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly."  *Whalen v. Trippett*, 2000 U.S. App. LEXIS 16216 at *7 (6th Cir. 2000), *citing Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).  "It is within [a trial judge's] province ... to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination."  *United States v. Frederick*, 406 F.3d 754, 762 (6th Cir. 2005), *quoting United States v. Blakeney*, 942 F.2d 1001, 1013 (6th Cir. 1991).

**1.      Limiting Instructions**

Felder argues that the trial court should have given limiting instructions due to the following statements made at trial.  During its opening statement, the prosecution stated that Felder sold drugs and was arrested in Willoughby Hills for selling heroin.  (Tr. 274-75.)  Also, a police officer testified that he found money and two cell phones on Felder's person.  (Tr. 499-

26

500.)  Defense counsel objected to the former statement only.  (Tr. 274-75, 499-500.)  The state appellate court observed that the prosecution's statements, made during opening statements, did no constitute evidence and that the jury was instructed as such.  *Felder*, 2006-Ohio-5332 ¶57.

Indeed, prior to the opening statements, the trial judge warned jurors that opening statements are not evidence; and, that if a party claims that it will produce evidence proving an issue but fails to do so, then the jury has no evidence and the claim should be ignored.  (Tr. 271.)  At the close of the evidence, the trial court again reminded jurors that what the attorneys said did not constitute evidence, as evidence must come from either the witness stand or the exhibits.  (Tr. 557-58.)  Finally, during jury instructions, the trial court told the jury for a third time that opening statements were not evidence and that the attorney's statements, if not supported by the evidence, should be ignored.  (Tr. 607.)  As such, Felder has not identified any evidence of bad acts, only opening statements, that reasonably could have necessitated limiting instructions. Furthermore, the state appellate court held that the fact Felder was arrested for drug trafficking while having criminal tools in his vehicle was admissible to show a plan or scheme of illegal drug trafficking.  *See Ohio v. Felder*, 2006-Ohio-5332 ¶57.  The state appellate court's finding that Felder was not denied due process as a result of the prosecution's opening statements and the trial court's alleged failure to provide limiting instructions constitutes a reasonable application of federal law.

Felder also argues that his due process rights were violated when the trial court did not provide an instruction limiting the use of Felder's prior conviction for drug trafficking.  (Doc. No. 9.)  After the jury instructions, the trial court inquired whether the parties had "additions, deletions or objections to anything given by the Court."  (Tr. 647.)  The only objections raised

27

by defense counsel were to the trial judge's "ad-libbing" rather than reading the instructions verbatim and to a reference regarding drug possession in Lake County.  (Tr. 651.)  The state appellate court did not address defense counsel's failure to object, but rather found that the omission of the limiting instruction was harmless due to the jury's acquittal of Felder on drug trafficking charges despite his prior conviction for the same offense.  *See Ohio v. Felder*, 2006-Ohio-5332 ¶58.

Upon federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *accord California v. Roy*, 519 U.S. 2, 4-5 (1996); *Fulcher v. Motley*, 444 F.3d 791, 808-09 (6th Cir. 2006).  A district court judge reviewing a habeas application must let a judgment stand if the error had no or very slight effect or influence, while the error is not harmless if the judge has grave doubt as to whether a trial error had substantial and injurious effect or influence in determining the jury's verdict.  *See O'Neal v. McAninch*, 513 U.S. 432, 435-38 (1995).

After a review of the transcript, this Court agrees with the state appellate court that the omission of a limiting instruction was harmless.  First, the trial transcript is devoid of repetitive and gratuitous references to Felder's prior conviction for drug trafficking.[11]  Felder's selective quotations from the transcript where the prosecution, in closing arguments, stated that Felder was "a convicted drug dealer" and that the jury "must find him guilty" appear to be taken out of context.  (Doc. No. 9 at 21.)  At that point in the closing argument, the prosecution was

---

[11]  This issue is separate and distinct from Felder's argument that references to the arrest in Lake County, which resulted in the search of his apartment in Cuyahoga County, should also have been excluded as evidence of other bad acts.

28

addressing the elements of possessing a firearm while under a disability.  (Tr. 580-81.)  One of the elements of this offense is a prior conviction.  It is entirely appropriate for a prosecutor to argue in his or her closing that the elements of a crime have been proven and that the defendant must therefore be convicted.  Moreover, the state appellate court's finding – that the acquittal of Felder on the drug trafficking charge demonstrates a lack of a substantial and injurious effect – was reasonable.  In addition, as discussed below, there was not only sufficient but substantial evidence in the record to support Felder's convictions for possession of drugs, criminal tools, and a firearm.  Thus, the Court is convinced that the jury's verdict is not the result of prejudice or bias towards a defendant with a prior conviction, but rather a product of the jury's determination of the factual evidence presented during trial.

As such, Felder's seventh ground for relief is without merit.

### 2.    Possession Instruction and Non-Verbatim Instructions

Felder also argues that the trial court erred by including an instruction on the concept of "constructive possession."  (Doc. No. 1.)  He also objects to the trial court's failure to read the jury instructions verbatim and the trial judge's attempts to explain certain instructions.  *Id.*

Felder's claim that the trial court erred by giving an instruction on constructive possession is without merit.  Felder has cited no law to support his novel theory that "constructive possession" is an alternative concept from possession as opposed to merely a form of possession.  In fact, the case law supports the opposite conclusion.  "Possession may be actual *or* constructive."  *State v. Fry*, 2007-Ohio-3240 at ¶47, 2007 Ohio App. LEXIS 2998 (Ohio Ct. App. 2007) (emphasis added), *quoting State v. Kobi*, 122 Ohio App.3d 160, 174, 701 N.E.2d 420 (Ohio Ct. App. 1997); *see also State v. Wolery*, 46 Ohio St. 2d 316, 328, 348 N.E.2d

29

351 (Ohio 1976).  The mere fact that property is located in a premises under one's control does not, of itself, constitute constructive possession; constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession.  *See State v. Hankerson*, 70 Ohio St. 2d 87, 91, 434 N.E.2d 1362 (Ohio 1982).  Nevertheless, knowledge of contraband in one's home is sufficient to show constructive possession.  *Id*.  Also, circumstantial evidence is sufficient to support the elements of constructive possession and actual ownership is not necessary to establish constructive possession.  *See, e.g., State v. Jenks* (1991), 61 Ohio St.3d 259, 272-73, 574 N.E.2d 492 (Ohio 1991); *State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (Ohio Ct. App. 1993).

Because the jury instruction accurately reflects Ohio law concerning possession, Felder has failed to establish any trial error that could give rise to a due process claim.  Furthermore, the Court fails to find any rational legal basis in Felder's argument that an instruction on constructive possession is tantamount to an amendment of the indictment.

Felder also objects to the trial court's failure to read the jury instructions verbatim and the trial judge's attempts to explain certain instructions.  He contends that the trial judge violated O.R.C. § 2945.10(G) by modifying or explaining the written jury instructions.  (Doc. No. 9 at 23.)  Generally, a federal court reviewing a habeas petition is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law," unless the error is so egregious as to amount to a denial of fundamental fairness or of other federal rights.  *Pulley v. Harris*, 465 U.S. 37, 41

(1984).  Felder fails to articulate how the trial court's non-compliance with the statute rises to that level.  His sole citation to federal law is inapposite.  As stated above, a party may not refer to an issue in a perfunctory manner and expect this Court to create a fully-developed legal "argument" from a party's skeletal "position" or "statement."  *McPherson*, 125 F.3d at 995-996.

Therefore, ground eight of Felder's petition is not well taken.

### 3.      Trial Court's Determination of a Factual Issue

Felder also alleges that his due process rights were violated when the trial court determined a factual issue when instructing the jury.  (Doc. No. 1.)  Specifically, Felder challenges the following comment of the trial judge.

> Now, since there's two counties in question, they're accusing him of the possession in Cuyahoga County.  The possession was at his apartment.  Not the possession that was in the car.  Because that was across the county line.  That was in Lake County.  Everybody follow what possession we're talking about.

(Tr. 615-16.)

Felder's attempt to portray the above statement as the trial judge usurping the function of the jury as the fact finder is entirely unreasonable.  Although the trial judge might have inserted the modifier "alleged" before "possession," he was clearly trying to warn the jurors that the case before them concerned only alleged criminal acts occurring in Cuyahoga County.  Felder has taken the trial judge's statement out of context and, in his traverse, omitted the preceding line wherein the trial judge stated that Felder was "accused" of possession in Cuyahoga County.  The state appellate court found that the above instruction did not prejudice Felder because the jury was otherwise properly instructed on the element of possession.  *Felder*, 2006-Ohio-5332 at ¶69.  That court's finding was not an unreasonable application of clearly established federal law.

Therefore, Felder's argument that the he was denied due process because the trial court

31

decided a factual issue is without merit.

**E.      Ground Ten: Sufficiency of the Evidence**

Felder argues that his convictions violate due process because they were not supported by sufficient evidence.  (Doc. No. 1.)  He contends that there was no evidence that he "possessed" drugs, criminal tools, or a weapon.  (Doc. No. 9.)

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Felder's argument largely rehashes his argument from ground eight alleging that jury instructions on constructive possession were improper.  However, as discussed above, under Ohio law, possession may be either actual *or* constructive and knowledge of contraband in one's

32

home is sufficient to show constructive possession. *Hankerson*, 70 Ohio St. 2d at 91.  Here there was evidence that would allow a rational trier of fact to find the following: (1) Felder lived in the apartment that was searched; (2) the items Felder was convicted of possessing were all found in his apartment, and (3) the contraband items were either in plain view or in areas where their presence would not remain undetected by Felder.  For example, the gun was found on a shelf in the headboard of the only bed in the apartment.  Clearly, the jury did not lose its way.

Therefore, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that all the essential elements of the crime were proven beyond a reasonable doubt.  As such, there was sufficient evidence to support Felder's convictions and ground ten of Felder's petition is without merit.

**F.      Ground One: Right to Appeal**

Finally, Felder alleges that he was denied a fair appeal in violation of the Fourteenth Amendment.  (Doc. No. 1.)  He argues that the state appellate court misconstrued the record when it found that (1) defense counsel failed to object in one instance when in fact he had objected; (2) it was defense counsel and not the prosecutor that elicited hearsay testimony; and (3) the trial court was confused regarding the order in which the alternate jurors were selected. (Doc. No. 9.)

These claims merely rehash arguments raised in Felder's other grounds for relief – all of which are lacking in merit.  He has not identified any clearly established federal law supporting his claim that an appellate court's inaccurate citations to the record, even when considered

33

cumulatively, violates a petitioner's federal constitutional rights.[12]  As the Court has addressed

each of these claims individually, there is no need to consider them further here.

### IV.  Conclusion

For the foregoing reasons, it is recommended that Felder's Petition for a Writ of Habeas

Corpus (Doc. No. 1) be DENIED.

/s/ *Greg White*
U.S. Magistrate Judge

Date: <u>May 19, 2008</u>

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[12]  Felder's reliance on *Griffin v. Illinois*, 351 U.S. 12 (1956) and *Riggins v. Rees*, 74 F.3d 732 (6th Cir. 1996) is misplaced.  In *Griffin*, "the Supreme Court held that, to satisfy the commands of the Equal Protection Clause, states may not condition the exercise of basic trial and appeal rights on a defendant's ability to pay for such rights."  *Riggins*, 74 F.3d at 735.  Felder does not allege that he was denied a fair appeal due to a procedural requirement that was unfairly oppressive due to indigence.